UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ELIZABETH ROBB BICE, CLARE ROBB  :
WENK, EDWARD ROBB, and BARBARA ROBB,
                                 :
            Plaintiffs,
                                 :    07 Civ. 2214 (PAC)
    - against -
                                 :    OPINION AND ORDER
GEORGE E. ROBB, JR.,
                                 :
            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HONORABLE PAUL A. CROTTY, United States District Judge:

This family dispute involves an allegation by siblings Elizabeth Robb Bice, Clare Robb Wenk, Edward Robb, and Barbara Robb (collectively "Plaintiffs") that their brother, Defendant George E. Robb, Jr., reneged on a promise made more than two decades ago to their father, George E. Robb, Sr., to manage the family business "for the benefit of family members." (Complaint, filed Mar. 14, 2002, ¶ 2.) In 2007, they commenced this action seeking to impose a constructive trust on the proceeds of Defendant's sale of his controlling interest in the business six years earlier in 2001.[1] (Compl. ¶ 3.) Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion is granted and the complaint is dismissed.

## BACKGROUND

**I. Facts Alleged in the Complaint**

Prior to October 1985, Robb Sr. was the controlling shareholder of RPM Securities Co., Inc. ("RPM"), a New York Stock Exchange specialist firm that his father had helped found in 1925.

---

[1] Plaintiffs' Complaint also alleges a claim for breach of contract based on identical facts. (Compl. ¶¶ 3, 46-50.) In their opposition brief, plaintiffs state: "Since plaintiffs' breach of contract claim relates to the same promise as plaintiffs' constructive trust claim, this memorandum of law will not address separately the breach of contract claim." (Pls. Mem. 4 n.2.) The Court will do the same.

1

(Compl. ¶¶ 4, 12-13.) Robb Sr. managed the company to benefit his family members by providing employment or gifting company shares. (Compl. ¶ 14.) In 1984, Robb Sr., facing health concerns, began soliciting offers for his controlling share, receiving bids from financial services firms. (Compl. ¶¶ 15-16.) In 1985, Robb Sr. rejected more lucrative offers in order to accept a $35 million leveraged buy-out bid from his 31-year-old son, Robb Jr., so that the business would remain a family asset. (Compl. ¶¶ 18-19.) Plaintiffs contend that Robb Sr. only agreed to the sale after Robb Jr. "expressly promised that he would manage the business to enhance the welfare of the family." (Compl. ¶ 20.) Subsequent to that agreement, the deal closed and Robb Jr. assumed control of the corporation.

According to the Complaint, "[a]lmost immediately upon assuming control of the company, Robb Jr. breached the trust that his father had placed him" by terminating or suppressing the promotion of family members, diminishing their stockholdings, and generally neglecting the business. (Compl. ¶¶ 21-22.) These actions caused relations between father and son to deteriorate, as Robb Sr. grew despondent over Robb Jr.'s management of the company. (Compl. ¶ 23.) Ultimately, in September 1991, Robb Sr. revoked a will under which Robb Jr. was to have been the trustee, replacing it with a new will that bequeathed his entire estate to his wife, Clare, and, in the event that she predeceased him, to all of his children (presumably including Robb Jr.) in equal shares. (Compl. ¶ 23.) George Sr. died on October 12, 1991. There is no allegation that Robb Sr. ever instituted an action against Robb Jr. for breach of contract.

RPM was purchased by and merged into LaBranche & Co., Inc. ("LaBranche"), with the approval of its thirteen stockholders, on March 15, 2001. (Compl. ¶ 28.) In the proxy statement describing the merger agreement, Robb Jr. was listed as the controlling shareholder, with 36,000 shares or a 51.36% interest in the company. (Compl. ¶ 26.) Per the merger agreement, Robb Jr.

2

exchanged these shares for 3,556,008 shares of LaBranche common stock and 53,355.08 shares of preferred stock worth nearly $180 million. (Compl. ¶ 30.)

The Complaint alleges that, despite selling his family business for an economic windfall, Robb Jr. failed to make any meaningful distribution to his siblings from the proceeds. (Compl. ¶ 31.) Instead, Robb Jr. established The GR Family LLC (the "LLC") with eight members: two of Robb Jr.'s children and six of his siblings (including the four Plaintiffs). (Compl. ¶¶ 32-33.) On the date the family members were added to the LLC, May 30, 2001, each individual account contained 4,000 LaBranche shares worth $157,920. (Compl. ¶ 33.) This amount represented approximately 0.1% of the total number of LaBranche shares Robb Jr. received as consideration for the merger. (Compl. ¶ 34.) Since funding the LLC, Robb Jr. has refused his siblings' requests for information about its purpose or terms. (Compl. ¶ 36.) Though Robb Jr. led them to believe that their shares would be worth a significant sum after seven years, on March 12, 2007, 4,000 shares of LaBranche stock were worth $31,480. (Compl. ¶¶ 36, 38.)

## II. The Parties' Arguments

Plaintiffs claim that the oral promise by Robb Jr. to his father to "manage the company to benefit the family" was legally enforceable because Robb Sr. agreed to the 1985 leveraged buy-out in reliance on that promise. (Compl. ¶¶ 39-50.) That promise was violated, they claim, when Robb Jr. "manag[ed] the company to the detriment of family members and failed to share the proceeds of its sale." (Compl. ¶ 43.) As the intended beneficiaries of that promise (Compl. ¶ 41), Plaintiffs now seek to enforce their rights. They claim that Robb Jr. was unjustly enriched when, in violation of his promise, he retained substantially all of the proceeds of the 2001 sale, and seek the imposition of a constructive trust as to those proceeds. (Compl. ¶¶ 39-45.)

3

In response, Defendant points to certain portions of the Complaint that allege that he breached his purported obligations to Plaintiffs "almost immediately" after the 1985 transaction, rendering the constructive trust claim time-barred. (Def. Mem. 2.) Defendant also claims that the alleged oral promise to manage a company for the benefit of family is unenforceable for vagueness. (Def. Mem. 2.) Defendant further contends that the promise is unenforceable because Robb Sr. sold his shares to Robb Jr. in an integrated and comprehensive written agreement that nullified collateral oral commitments. (Def. Mem. 2, 9.) Finally, Defendant claims that Plaintiffs fail to properly allege detrimental reliance and unjust enrichment, two essential elements of a constructive trust claim under New York law. (Def. Mem. 2-3, 13-14.)

### III. The Litigation History

Plaintiffs' filed their Complaint on March 14, 2007. On May 9, 2007, the Court granted Plaintiffs' request to change attorneys. At a status conference held on May 23, 2007, the Court gave the newly-appointed Plaintiffs' counsel until June 18, 2007 to determine whether it would amend the Complaint. Counsel chose not to amend the complaint, and Defendant's motion to dismiss followed.

The Court heard oral argument on the motion on February 6, 2008.

## DISCUSSION

### I. Motion to Dismiss Standard

On a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint," and construe the complaint in the light most favorable to the plaintiff. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1975 (2007) (citation omitted). But mere "formulaic recitation of a cause of action's elements" will not suffice; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. To survive a motion to dismiss, courts require "enough facts to state a claim to relief that is plausible on its face." Id. at

4

1974; see also Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007) (a plaintiff must "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."). Plaintiff must therefore allege "plausible grounds to infer" that its claims of misstatement or omissions rise "above the speculative level." Twombly, 127 S. Ct. at 1965.

**II. Statute of Limitations**

Under New York law, Plaintiffs' constructive trust claim is subject to a six-year statute of limitations period, see N.Y. C.P.L.R. § 213(1), that accrues upon the occurrence of the wrongful act giving rise to the claim of restitution. See Dolmetta v. Uintah Nat. Corp., 712 F.2d 15, 18 (2d Cir. 1983); McGovern v. Solomon, 466 F. Supp. 2d 554, 558 (S.D.N.Y. 2006); Boronow v. Boronow, 71 N.Y.2d 284, 287-88 (1988); see also Kaufman v. Cohen, 307 A.D.2d 113, 127 (N.Y. App. Div. 1st Dep't 2003) (noting that the occurrence of the wrongful act, and not the discovery of facts constituting the fraud, triggers the limitations period). If an initially valid transfer only later becomes wrongful then it is at that time, and not before, that the statute of limitations accrues. See McGovern, 466 F. Supp. 2d at 559 (citing Pate v. Pate, 17 A.D.3d 334, 334 (N.Y. App. Div. 2d Dep't 2005)); Morando v. Morando, 41 A.D.3d 559, 561 (N.Y. App. Div. 2d Dep't 2007). The triggering wrongful act usually occurs when "the party holding legal title takes some action that is inconsistent with the promise he made to the transferor." Reale v. Reale, 485 F. Supp. 2d 247, 252 (W.D.N.Y. 2007); see also Mardiros v. Ghaly, 206 A.D.2d 414, 415 (N.Y. App. Div. 2d Dep't 1994) (limitations period runs from "when the constructive trustee's interest in the property first becomes adverse to the plaintiff's interests").

Here, the Complaint contains various allegations of wrongdoing committed by Robb Jr. in connection with his purported promise to manage RPM for his family's benefit. The earliest allegations concern actions taken "[a]lmost immediately upon assuming control of the company" in

5

1985, when Robb Jr. terminated, displaced, and/or failed to promote family members then working at RPM and took steps to diminish the shareholdings of family members. (Compl. ¶ 21.) The Complaint also demonstrates that Robb Jr.'s alleged mismanagement was open and known; his father voiced his displeasure by removing him as the trustee of his estate in 1991. (Compl. ¶ 23.) On these facts, Robb Jr. held his controlling interest in RPM adversely to the interests of Plaintiffs as early as 1985, far more than six years prior to the initiation of the present action.

Plaintiffs categorize these allegations as "nothing more than background" (Tr. at 19.), and insist that they seek to recover only for Defendant's failure to share with his siblings the $180 million in proceeds he received by selling his controlling stake of RPM on March 15, 2001. (Pls. Mem. 23.) They claim that Robb Jr.'s conduct in 1985 did not create an enforceable duty of restitution; only in 2001 did he abandon his promise to manage the company to enhance the welfare of the family, thereby triggering the statute of limitations. (Pls. Mem. 23.) If this theory is correct, Plaintiffs' suit is timely by a single day.

Plaintiffs' argument ignores the language of their own Complaint. In ¶ 20, the Complaint alleges that "Robb Jr. expressly promised that he would manage the business to enhance the welfare of the family." The Complaint fails, however, to define "the family" or to explain what it meant to "enhance the welfare of the family." Thus, the allegations in the very next paragraph, ¶ 21, describe actions taken by Robb Jr. "[a]lmost immediately upon assuming control" that, read plainly, did not enhance the welfare of certain family members and, in fact, were detrimental to their interests. The Complaint plainly states that Robb Jr. took adverse employment actions as to his brother, Plaintiff Edward Robb, and brother-in-law, Matthew Farrell. (Compl. ¶ 21.) There is no suggestion that these relatives were not "family" covered by the promise. Certainly, it cannot be argued that, by taking "steps to diminish the shareholdings of family members" (Compl. ¶ 21) or by neglecting a business

critical to the economic fortunes of his family (Compl. ¶ 22), he was enhancing the family's welfare. Indeed, Plaintiffs complain that, under Robb Jr.'s stewardship, RPM lost its status as one of the top specialist firms on Wall Street,[2] presumably striking a blow to the family's economic interest. Thus, while the sale of RPM and subsequent retention of the proceeds may have been the most demonstrative manifestation of Robb Jr.'s intention to renege on his promise, the Complaint makes clear that it was but the final act in a sixteen-year saga in which Robb Jr. managed RPM adversely to his family's interest.

Robb Jr.'s refusal to share the proceeds of the 2001 sale "did not serve to extend or otherwise toll the period of limitations since the defendant's interest in the property was held adversely to the plaintiffs' interest" as early as 1985. McGovern, 466 F. Supp. 2d at 559 (quoting Dybowski v. Dybowska, 146 A.D.2d 604, 605 (N.Y. App. Div. 2d Dep't 1989)). Accordingly, Plaintiffs' Complaint is time-barred.[3]

The parties' remaining contentions are without merit or need not be reached in light of the Court's determination.

## CONCLUSION

The Complaint is dismissed with prejudice for Plaintiffs' failure to state a claim on which relief may be granted. The Clerk of Court is directed to terminate this action.

Dated: February 29, 2008
      New York, NY

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge

---

[2] Plaintiffs allege that, by 2000, "RPM had dropped to being the sixth largest specialist firm on the NYSE" (Compl. ¶ 24), but fail to provide context, such as RPM's ranking in 1985 or the number of specialist firms there are overall.
[3] Plaintiffs' breach of contract claim, based on the same facts, is also dismissed because the limitations period for both constructive trust and breach of contract claims is six years. See N.Y. C.P.L.R. § 213(2).

7

critical to the economic fortunes of his family (Compl. ¶ 22), he was enhancing the family's welfare. Indeed, Plaintiffs complain that, under Robb Jr.'s stewardship, RPM lost its status as one of the top specialist firms on Wall Street,[2] presumably striking a blow to the family's economic interest. Thus, while the sale of RPM and subsequent retention of the proceeds may have been the most demonstrative manifestation of Robb Jr.'s intention to renege on his promise, the Complaint makes clear that it was but the final act in a sixteen-year saga in which Robb Jr. managed RPM adversely to his family's interest.

Robb Jr.'s refusal to share the proceeds of the 2001 sale "did not serve to extend or otherwise toll the period of limitations since the defendant's interest in the property was held adversely to the plaintiffs' interest" as early as 1985. McGovern, 466 F. Supp. 2d at 559 (quoting Dybowski v. Dybowska, 146 A.D.2d 604, 605 (N.Y. App. Div. 2d Dep't 1989)). Accordingly, Plaintiffs' Complaint is time-barred.[3]

The parties' remaining contentions are without merit or need not be reached in light of the Court's determination.

## CONCLUSION

The Complaint is dismissed with prejudice for Plaintiffs' failure to state a claim on which relief may be granted. The Clerk of Court is directed to terminate this action.

Dated: February 29, 2008
New York, NY

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

---

[2] Plaintiffs allege that, by 2000, "RPM had dropped to being the sixth largest specialist firm on the NYSE" (Compl. ¶ 24), but fail to provide context, such as RPM's ranking in 1985 or the number of specialist firms there are overall.
[3] Plaintiffs' breach of contract claim, based on the same facts, is also dismissed because the limitations period for both constructive trust and breach of contract claims is six years. See N.Y. C.P.L.R. § 213(2).

7